**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JEFFERY BOYER,                                                  Case No. 1:16-cv-644

             Plaintiff,                                     Barrett, J.
                                                                Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.


**REPORT AND RECOMMENDATION**

Plaintiff Jeffery Boyer filed this Social Security appeal in order to challenge the Defendant's denial of his disability claim. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents several claims of error. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED.

**I. Summary of Administrative Record**

Plaintiff filed applications both for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") in May 2010, alleging that he became disabled on January 28, 2008 due to a combination of a bad back and being a slow learner. (Tr. 288, 292, 338). Through development of the administrative record, additional physical and mental limitations were considered. After Plaintiff's applications were denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

On January 25, 2013, following a hearing, ALJ Irma Flottman issued a written decision concluding that Plaintiff was not disabled. The Appeals Council denied review.

Represented by different counsel, Plaintiff sought judicial review in the Dayton Division of this Court.  *See Boyer v. Colvin*, Case No. 3:14-cv-256.  Soon after Plaintiff filed his first federal complaint, the parties filed a joint motion to remand to the Social Security Administration for further review.  The Commissioner jointly requested remand because the determination of ALJ Flottman relied, in part, upon evidence pertaining to a different individual in her January 25, 2013 unfavorable decision.  (Tr. 112).  U.S. District Judge Rice granted the joint motion to remand on November 13, 2014, and the case was remanded to the Social Security Administration for further proceedings, without substantive review of the merits by this Court.

While his original claims were still pending, Plaintiff filed a new application for benefits.  The Social Security Agency granted that application, finding Plaintiff to be entitled to benefits as of January 26, 2013 (the day after ALJ Flottman's decision), based on Grid Rules that mandated a finding of disability based upon Plaintiff's age and a determination that he had become limited to a reduced level of sedentary work.  (Tr. 112).

At the same time, the Appeals Council remanded back to the ALJ for a new hearing on the original disability period, now considered as a closed period dating from January 2008 through January 25, 2013.  A second hearing was held on September 2, 2015 in Dayton, Ohio before a new ALJ, Mark Hockensmith.  (Tr. 38-69).  Represented by new counsel, Plaintiff and an impartial vocational expert ("VE") appeared and gave testimony.  On October 6, 2015, ALJ Hockensmith issued a decision, again concluding that Plaintiff was not disabled for the five-year closed period between 2008 and 2013.  (Tr. 11-28).  The Appeals Council denied further review; therefore, the ALJ's 2015 decision remains as the final decision of the Commissioner.  Plaintiff filed this second

case in order to seek federal judicial review of the ALJ's non-disability determination for the referenced period beginning on January 28, 2008 and ending on January 25, 2013.

Plaintiff has an eleventh grade education, with past relevant work as a forklift operator and as a potato peeling machine operator. (Tr. 26). On the alleged disability onset date, Plaintiff was still a "younger individual" at 48 years old, although he moved up to the age category of closely approaching advanced age (50 to 54) by the time the ALJ issued his decision. (*Id.*) There is no dispute that Plaintiff cannot perform his past relevant work, which was performed at the medium exertional level.

The ALJ determined that Plaintiff suffers from severe impairments of "degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease (COPD), diabetes mellitus, obesity, abdominal pain, residuals of polio, depression, borderline intellectual function, learning disability, and alcohol dependence." (Tr. 13). However, the ALJ determined that Plaintiff did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability. (Tr. 15). Instead, the ALJ found that Plaintiff retained residual functional capacity ("RFC") to perform a limited range of light work with the following restrictions:

> (1) No ladders, ropes, scaffolds; (2) occasional use of ramps[,] stairs; (3) occasional push pull with left lower extremity; (4) occasional foot controls on left; (5) occasional stooping, kneeling, crouching, crawling; (6) no overhead reaching; (7) avoid concentrated exposure to extreme heat and extreme cold and humidity; (8) avoid concentrated exposure to vibration; (9) avoid concentrated exposure to fumes, odors, dusts, gases and poorly ventilated areas; (1) no work at unprotected heights; (11) no work with dangerous machinery; (12) [n]o commercial driving; (13) simple, routine, repetitive work; (14) in a static work environment with few changes in routine; (15) no fast paced work or strict production quotas; (16) no contact with public; (17) occasional contact with coworkers and supervisors; (18) limited to hearing and understanding simple, oral instructions.

3

(Tr. 19).  Based on the testimony of the vocational expert, the ALJ determined that prior to the date he was adjudged to be disabled, Plaintiff still could perform approximately 2.9 million jobs that existed in in the national economy, including the representative unskilled occupations of clothing marker, mail clerk, and cafeteria attendant.  (Tr. 37). Although the ALJ determined that Plaintiff remained capable of a limited range of light work, the VE provided alternative testimony that 464,000 jobs would be available to someone with Plaintiff's RFC if he were restricted to sedentary work. (Tr. 66-67).

In his Statement of Errors, Plaintiff first argues that the ALJ improperly evaluated the medical evidence by failing to give controlling weight to the opinion of a treating physician, by failing to give the appropriate level of deference to the same opinion, and by failing to sufficiently articulate the weight given to other medical source opinions.  In a closely related additional claim, Plaintiff contends that the ALJ erred by "play[ing] doctor."  (Doc. 10 at 9).   None of the asserted errors requires reversal.

## II. Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability."  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant

4

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

Whether considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Plaintiff's Assertions of Error

Plaintiff's claims of error focus on the ALJ's evaluation of his physical limitations. Plaintiff asserts no error with respect to the mental limitations determined by the ALJ; therefore, any error concerning those limitations has been waived.

Medical opinion evidence concerning Plaintiff's physical limitations was offered by Dr. Rudy Bohinc, Plaintiff's treating family physician, in February 2011. Some of Dr. Bohinc's opinions would support a determination that Plaintiff was disabled. Additional medical opinion evidence was offered by two examining consultants, Dr. Onamusi and Dr. Duriitsch, and by two non-examining consultants, Gerald Klyop, M.D. and Myung Cho, M.D. Briefly summarizing their reports, both examining consultants offered opinions in 2010 that Plaintiff could perform a limited range of light work. (Tr. 400-405, Tr. Tr. 664-665, 684-687). The two non-examining consultants disagreed with the examining consultants, opining that Plaintiff remained capable of a broad range of medium level work with relatively few limitations. (Tr. 425-431, 455). While the ALJ briefly referenced one of the non-examining consulting opinions (Tr. 20, citing Exhibit 6-F), he did not otherwise discuss or appear to rely on those opinions. The ALJ also expressly declined to consider two later consulting examining reports dated April and May, 2015, on grounds that those reports were generated more than two years after the latest date in the relevant disability period. (*See, e.g.*, Dr. Swedberg's April 215 report

6

at Tr. 736-750, opining that Plaintiff remained capable of medium level exertional weight limits, with lifting up to 100 pounds occasionally, but with postural restrictions of sitting for 4 hours, standing for 3 hours, and walking for 1 hour).

### 1. Failure to Give Controlling Weight to Dr. Bohinc

Plaintiff first claims that the ALJ committed reversible error when he failed to give controlling weight to the opinions of his treating family physician, Dr. Bohinc.  Dr. Bohinc completed a two-page Basic Medical Form for the Ohio Department of Job & Family Services on February 3, 2011, more than three years _after_ Plaintiff's alleged onset of disability.  On the check-box portion of the form, Dr. Bohinc opined that Plaintiff could stand/walk for 2-4 hours per day, or 1 hour continuously, could sit for the same amount of time, but could lift no more than 5 pounds even occasionally.  He opined that pushing/pulling, reaching, and repetitive foot movements were "moderately limited," and that Plaintiff's ability to bend was "markedly limited."

Arguably, someone with the postural limitations offered by Dr. Bohinc would be limited to sedentary work, because light work typically pemits "frequent" standing and/or walking, defined as up to 6 hours in an 8–hour day, while sedentary work generally limits standing and/or walking to 2 hours in a workday.  However, sedentary work requires the ability to lift up to 10 pounds and Dr. Bohinc opined that Plaintiff could lift no more than 5 pounds.  Therefore, Dr. Bohinc's opinions were work-preclusive.

Dr. Bohinc's narrative explanations were exceedingly brief.  In response to a query seeking a description of what "observations and/or medical evidence led to your findings…Please provide examples of specific physical limitations," Dr. Bohinc wrote only "history & physical."  (Tr. 732, emphasis added).  In another narrative portion of the form that asked for a description of his patient's conditions, including "appropriate ICD-

7

9CM and/or OSM-MR code(s)," Dr. Bohinc wrote "chronic back pain, radiates to legs, unable to bend, lift, carry.  Occ. has to use cane.  Has Hx Polio with left chronically shorter." (Tr. 731).  When asked to provide details, including specifics of "onset, duration, treatment, prescribed medications, prognosis, etc." Dr. Bohinc wrote only "chronic condition, freq. exacerbation and flare-ups."  In response to a query about mental impairments, Dr. Bohinc wrote "anxious & depressed at times." (*Id.*)  Less than a week later, on February 8, 2011, Dr. Bohinc opined that "Pt. is unable to work <u>at this time</u>." (Tr. 561, emphasis added).  No explanation or support is provided for that one sentence opinion, which was handwritten on a prescription pad form.

The ALJ acknowledged that because Dr. Bohinc is a treating physician, his opinions would be given "controlling weight" if they were "well supported and not inconsistent with the other substantial evidence in the case record." (Tr. 25).  However, the ALJ also noted that he was not required to give controlling weight to opinions that were not "well supported by medical acceptable clinical and laboratory diagnostic techniques," and that were "inconsistent with the other substantial evidence in the record." (Tr. 25, internal citations omitted).  Moreover, the ALJ explained that he was not bound "by conclusory statements…, particularly where they are unsupported by detailed objective criteria and documentation, or are inconsistent with the documentation that does exist."  *Id.*, (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984), *Buxton v. Halter*, 246 F.3d 762 (6th Cir. 2001)).

After setting forth the regulatory factors to be considered, the ALJ reviewed Dr. Bohinc's opinions:

> Dr. Bohinc's assessments are entitled to some weight, but not to the extent that they purport to establish a condition of disability within the meaning of the Social Security Act at any time through January 25, 2013. On February 8, 2011, Dr. Bohinc reported that "Pt is unable to work at this

time" (Exhibit 21-F at 5). Dr. Bohinc provided no explanation for this statement, nor did he indicate any time frame during which the claimant's reported inability to work would last. On February 3, 2011, Dr. Bohinc completed a basic medical assessment for the Department of Job and Family Services and reported that the claimant could not lift[,] carry, or bend due to a chronic low back condition (Exhibit 38-F). He indicated the claimant could sit or stand/walk 2-4 hours each during an 8-hour workday, and was limited to lifting up to 5 pounds occasionally and frequently. Dr. Bohinc then indicated that the claimant was markedly limited in his ability to bend, and moderately limited in his ability to reach, in pushing/pulling, and performing repetitive foot movements. That opinion is given some weight, but his limitations in sitting, standing, walking, lifting, carrying, and bending are inconsistent with the normal examination findings contained throughout the record, including his own treatment notes and the findings of Dr. Onamusi and Dr. Duritsch. The record consistently documents normal muscle strength and normal gait, which is not consistent with the imposition of significant limits on sitting, standing, and walking. Accordingly because Dr[.] Bohinc's opinions are inconsistent with the objective and clinical findings of record, as well as other substantial evidence of record, they are entitled to some weight, but not weight to the extent that they purport to establish a condition of disability or greater functional limitation, than set forth above.

(Tr. 25-26).

The undersigned finds that Dr. Bohinc's 2011 opinion that Plaintiff "cannot work at this time" is not the type of "medical opinion" that can ever receive controlling weight. Aside from being conclusory and non-specific as to the time frame in which Dr. Bohinc believed Plaintiff to be disabled, opinions on the ultimate determination of disability are outside the scope of what is considered to be medical opinion, and instead are expressly "reserved to the Commissioner." *See* 20 C.F.R. §404.1527(d).[1] "Opinions on some issues…are not medical opinions…but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." *Id.; see also*

_____

[1]The Court recognizes that for claims filed on or after March 27, 2017, the Social Security Agency will use 20 C.F.R. §404.1520c. However, since Plaintiff's claim precedes that effective date, the applicable standards for review of medical evidence are those contained in 20 C.F.R. §404.1527.

SSR 96-5p, 1996 WL 374183, at *1 ("[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance"). Although Plaintiff quotes from a Michigan case for a contrary view, the citation is not persuasive to the extent that it conflicts with controlling regulations. *Cf. Lakowski v. Apfel*, 100 F. Supp.2d 474, 484 (E.D. Mich. 2000).

It is true that SSR 96-5p states that opinions about issues reserved to the Commissioner "must never be ignored," and that the agency will still explain the consideration given to such opinions. However, the ALJ adequately explained the weight he gave to all of Dr. Bohinc's opinions in this case, including his conclusory and unsupported disability opinion.

Plaintiff complains that the ALJ was required under SSR 96-5p to do more. In an argument presented for the first time in his reply memorandum, Plaintiff argues that the ALJ should have recontacted Dr. Bohinc for clarification of the reasons for his opinions, under both SSR 96-5p and 20 C.F.R. §1512(e)(1). The undersigned recommends against considering this argument since it was not included in the Statement of Errors.

To the extent considered by a reviewing court, the undersigned finds no merit in the claim that the ALJ erred in failing to recontact Dr. Bohinc. In a substantial number of cases in which an ALJ makes an adverse disability determination, the ALJ will have elected not to give controlling weight to the opinion of a treating physician that is not well-supported and/or is contrary to other substantial evidence in the record as a whole. As long as the ALJ provides "good reasons" as exhibited in this case, that evaluation will not be disturbed.

Plaintiff's new argument ignores Plaintiff's own burden of proof to support his disability claim, and attempts to turn the ALJ into an advocate on Plaintiff's behalf. An

ALJ is not required under the regulatory framework to recontact a physician who offers an unpersuasive, unsupported or conclusory opinion that is contrary to other substantial evidence in the record, even if that physician happens to be a treating physician. "[T]he duty to recontact a treating medical source is limited to cases in which the existing medical evidence is inadequate to make a disability decision…. Absent an inability to make a disability determination based on the inadequacy or incompleteness of [the treating physician's] opinions, the ALJ was under no duty to recontact [him] to seek further clarification." *Montano v. Commissioner of Social Sec.*, 2014 WL 585363, at *7 (S.D. Ohio 2014) (internal quotation marks and citation omitted); *accord Neace v. Astrue*, 2012 WL 4433284, at *7 (E.D.Ky. 2012).

Dr. Bohinc's opinions were entitled to controlling weight only if they were well-supported and not inconsistent with other substantial evidence in the record. Plaintiff now argues that they were consistent with both Dr. Onamusi's and Dr. Duritsch's opinions. They were not.

Dr. Onamusi performed a consultative examination on July 6, 2010. (Tr. 400-406). Plaintiff first asserts that Dr. Bohinc's opinion that Plaintiff could not bend, lift, or carry was consistent with Dr. Onamusi's opinion that Plaintiff had "restricted range of motion especially flexion movement," but Dr. Onamusi attributed that restriction "mostly due to abdominal obesity" rather than disc disease. (Tr. 401). In addition, Dr. Onamusi diagnosed "pain <u>exaggeration</u>." (Tr. 401, emphasis added). Dr. Onamusi found that Plaintiff walked with a normal gait and no obvious limp, had no muscle spasm, and had good reflexes in his lower extremities with no sensory loss. (Tr. 401). Given those findings, it is not surprising that Dr. Onamusi included <u>no</u> limitations on the number of hours Plaintiff could sit, stand, or walk. Also in contrast to Dr. Bohinc, Dr. Onamusi

opined that Plaintiff would be capable of both sedentary and "light physical demand level" fulltime work. (*Id*.). Thus, Dr. Onamusi's opinions were not consistent with Dr. Bohinc's more extreme functional limitations or disability opinion. In fact, although the ALJ ultimately found Plaintiff could perform a limited range of light level work consistent with Dr. Onamusi's opinions, the record reflects that in late 2010, two non-examining consultants opined that Dr. Onamusi's restriction to light duty was not fully supported by his clinical findings, and that Plaintiff would be capable of up to medium level exertion.

Plaintiff also claims that Dr. Bohinc's opinions were consistent with the opinions of Dr. Duritsch, to whom Dr. Bohinc referred Plaintiff on November 11, 2011. Again, I disagree. During an examination on December 6, 2011, Dr. Duritsch noted only localized back pain without any radiating pain. (Tr. 684). Despite clinical findings of "tenderness in the lumbar" region, (Tr. 685-686), Dr. Duritsch also reported an "entirely normal gait," and a normal lateral bend, negative straight leg, and normal hip motion. (*Id*.; Tr. 686). In contrast to the extreme limitations endorsed by Dr. Bohinc, Dr. Duritsch stated that Plaintiff could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally, which restrictions are consistent with light work. Dr. Duritsch did restrict Plaintiff to only occasional (up to 33% of the time) bending, squatting, kneeling, walking, standing, with no crawling or climbing, though he stated that Plaintiff's ability to sit was unlimited. (Tr. 664). Although Dr. Duritsch's opinion limiting Plaintiff to "light duty sedentary work" (Tr. 687), is slightly ambiguous,[2] with the exception of the standing/walking restriction, his opinions were consistent with the RFC determined by the ALJ.

_____

[2]The weight restrictions offered by Dr. Duritsch are consistent with the light exertional level as defined in the regulations. 20 C.F.R. §404.1567(b). However, the postural limitations are more consistent with sedentary work.

The undersigned agrees with the ALJ that Dr. Bohinc's opinions were poorly supported by his own clinical records. For example, Dr. Bohinc opined on the Basic Medical Form that Plaintiff had pain that "radiates to legs," but there is no record evidence of nerve root compression or radiculopathy. (Tr. 20, citing Exhibits 8-F, 21-F, 27-F, 39-F). Plaintiff himself testified that he could lift 10 pounds, twice the weight suggested by Dr. Bohinc. During an examination just 5 days after he opined that Plaintiff had a disabling level of limitations, his records reflect that Plaintiff was in no acute distress, with no notation of musculoskeletal abnormalities. (Tr. 563-564). In November 2011, Dr. Bohinc again noted that Plaintiff was not in distress, had good range of motion, with only slight restriction with forward flexion, negative straight leg raise, and normal deep tendon reflexes. (Tr. 640). In short, I find no error in the ALJ's evaluation of Dr. Bohinc's opinions, as those February 2011 opinions (relying on a vague reference to Plaintiff's "history and physical") were neither well-supported nor consistent with the evidence in the record as a whole.

### 2. Deferential Weight

Even if Dr. Bohinc's opinions were not entitled to controlling weight, Plaintiff argues that the ALJ still should have given the opinions "deferential weight" based upon the length of treatment relationship and long-term records confirming the existence of back pain over many years. However, the ALJ explicitly cited the regulatory factors to be considered when a treating physician's opinion Is not given controlling weight, thereby evidencing his knowledge and consideration of the relevant factors just before setting forth his detailed analysis of Dr. Bohinc's opinions. An ALJ does not have to conduct or articulate "an exhaustive factor-by-factor" analysis when weighing an opinion. *See Francis v. Com'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011).

13

Plaintiff's records do evidence chronic back pain dating years prior to his alleged disability onset date.  (*See e.g.* Tr. 449, relating a history of chronic low back pain "related to his previous history of post polio, may also have some arthritic changes," with follow up "prn."; *see also generally,* Tr. 400, referencing "longstanding history of back pain [of] more than 20 years.").   However, the undersigned cannot agree that Plaintiff's records chronicle pain at a disabling level prior to 2013.

Substantial evidence supports the ALJ's conclusion that Plaintiff's chronic low back pain was not disabling during the claimed period of disability.  Despite Plaintiff's long history of back pain, imaging studies revealed only mild degenerative changes and clinical findings (including those by Dr. Bohinc) do not support disabling limitations.  Dr. Bohinc prescribed only conservative medication therapy of periodic prescriptions for muscle relaxants and pain medication, with no reported side effects.  Plaintiff has never been hospitalized or even sought Emergency Room treatment for back pain.  Nine months after offering extreme and disabling limitations, Dr. Bohinc's clinical records underscore the lack of evidentiary support for his conclusory opinions:  "Has no specific Sxs that warrant getting MRI or surgery consult other than pain which is subjective. Can refer to PMR for functional movement eval."  (Tr. 641).

Plaintiff's own testimony also disagreed with Dr. Bohinc's restrictions, to the extent that Plaintiff testified that he could lift 10 pounds.  Plaintiff also testified that he had difficulty "sitting still" only "sometimes" due to back pain during the relevant period, and that when that happened, he would remain sitting but need to shift in his seat until his pain went away or lessened.  (Tr. 20; Tr. 52-53).  He testified that during the relevant period, his back pain was not constant but would come and go.  (Tr. 51).

14

Since Plaintiff's appeal primarily asserts disability caused by subjective complaints of pain, it is worth pointing out that the ALJ made an adverse credibility finding that is not challenged here.  The ALJ explained that Plaintiff's "inconsistent and unpersuasive" reports of his symptoms "strongly suggest[ed] that the claimant has exaggerated symptoms and limitations." (Tr. 23).  Inconsistencies noted by the ALJ included but were not limited to Plaintiff's responses during psychological and psychiatric testing, which led to an "invalid profile," an IQ score deemed to be an underestimate of intellect, and numerous clinical reports of a normal gait and other inconsistent complaints relating to low back pain, as well as mild objective physical findings. (Tr. 23). The ALJ noted evidence that Plaintiff had stopped working for reasons unrelated to disability.[3] (*Id.*)

To be clear, the undersigned has no doubt that Plaintiff experienced back pain from 2008-2013.  However, the issue is whether that pain and the limitations resulting therefrom were completely *disabling* during the relevant period.   Many people experience chronic back pain that is less than disabling. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230–231 (6th Cir.1990) (affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling); *see also Hericks v. Astrue*, 2012 WL 161105, at *11 (S.D.Ohio, 2012).

---

[3]Plaintiff's earnings records reflect multiple periods of years without employment, but also reflect continuous employment from 2000 through his alleged disability onset date in early 2008.  At his last hearing, Plaintiff testified that he "got let go" in 2008 although he also testified he was "having too many problems with my back and…anxiety attacks."  (Tr. 49).

### 3.   The ALJ's Choice of Adjectives

Plaintiff is highly critical of the ALJ's use of phrases like "some weight," "significant weight," and "great weight," to describe the weight he gave to both Dr. Bohinc's opinions and those of other medical sources.   Plaintiff contends that these phrases are not sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the opinions. *See* SSR 96-2.  Plaintiff argues that it is not clear, for example, how the phrase "significant weight" differs from "great weight."  (Doc. 10 at 15).  Plaintiff similarly asks rhetorically: "How much weight is some weight?" (Doc. 10 at 16).

The undersigned takes judicial notice of the fact that identical adjectives and modifiers are commonly – if not universally – used by ALJs in virtually every social security case filed in this Court. Thus, finding these descriptors to be inadequate would require a sea change in the social security jurisprudence of the Sixth Circuit.   The undersigned finds no legal support for such a dramatic change in the legal landscape. An ALJ should be free to use any adjectives he or she chooses, so long as the analysis as a whole, and in context, is sufficiently detailed to allow review.

Focusing in more specifically on how the ALJ applied the phrases in the record presented, Plaintiff criticizes the ALJ for applying "significant weight" and adopting some functional limitations, while not adopting other limitations included in the same source opinion.  Of course, some of these choices worked to Plaintiff's favor.  For example, the ALJ gave significant weight to the state agency consultant, but added additional "social restrictions" to Plaintiff's mental RFC that were not included by the agency consultant, based upon the findings of Dr. Schulz.  Less favorable was the ALJ's decision to give most of Dr. Duritsch's physical RFC opinions "significant weight," except for the portion

16

that added postural restrictions on standing/walking.  Last, with respect to Dr. Bohinc's opinion, Plaintiff argues that the ALJ's statement that he was giving "some weight" to the opinion was inconsistent with the ALJ discounting the portion "that purports to establish a condition of disability."  (Doc. 10 at 16).

Without citation to controlling authority, Plaintiff maintains that it constitutes reversible error for an ALJ to adopt one portion of an RFC opinion while rejecting another portion of the same opinion.  He argues that the ALJ erred by giving weight only to the portions of the various medical source opinions that "agreed with" the ALJ's RFC findings.  Plaintiff contends that the ALJ's decision to parse out the various portions of the opinion evidence, giving weight to some parts while rejecting others, makes it "difficult to determine the actual weight given to the various opinions" that "ultimately prevents a meaningful review."  (*Id.*)

Plaintiff is incorrect.  An ALJ is required to do precisely as the ALJ did here – to determine an RFC based upon the medical evidence as a whole.  In fact, the ALJ alone is responsible for determining a Plaintiff's RFC.  *See* 20 C.F.R. § 404.1546(d).  There is no regulatory requirement that an ALJ adopt every facet of a particular opinion in formulating an RFC, so long as the record supports the RFC actually determined by the ALJ, and he adequately explains his analysis in a manner sufficient to allow review.  On the record presented, the ALJ's physical RFC is most consistent with Dr. Onamusi's opinions, though it also finds strong support (except for the standing/walking restriction) with Dr. Duritsch.  A disagreement with how the ALJ decided to weigh differing medical opinions "is clearly not a basis for …setting aside the ALJ's factual findings."  *Mullins v. Sec'y of HHS*, 836 F.2d 980, 984 (6th Cir. 1987).  The ALJ adequately explained how

he arrived at the RFC determined in this case, and his analysis finds substantial support in the record as a whole.

### 4.  Argument that the ALJ Played Doctor and/or "Cherry Picked" Evidence

Plaintiff's final claim of error is a variation of the last claim.  He argues that the ALJ "play[ed] doctor" when he determined Plaintiff's RFC based upon the ALJ's own "independent" medical findings rather than based on the medical opinions.    Although Plaintiff relies most heavily on case law from other circuits, the undersigned acknowledges the existence of case law within the Sixth Circuit that supports the general proposition that an ALJ should not "play doctor" and make RFC determinations out of thin air, unsupported by medical evidence.   "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Com'r of Soc. Sec.,* 344 Fed. Appx. 181, 194 (6th Cir.2009).

However, while the undersigned can agree with Plaintiff's general statement of the legal standards to be applied, the undersigned cannot agree that the ALJ overstepped his boundaries in this case.  Rather than making up Plaintiff's RFC out of "thin air," the ALJ clearly relied on medical opinions and other relevant evidence to support each and every limitation determined in the RFC.  The ALJ did not interpret "raw medical data" to find that Plaintiff could engage in a restricted range of light exertional work, but instead relied on the specific opinions of Drs. Onamusi and Duritsch.   Although the ALJ relied most heavily on the opinions of Dr. Ornamusi (who did not limit Plaintiff to any set number of hours of walking/standing), he appropriately considered the opinion of  Dr. Duritsch and other medical sources..

It is not "cherry picking" when an ALJ reviews all of the medical opinions and evidence and makes reasoned and considered decisions to formulate the Plaintiff's

RFC.  On the record presented, the undersigned concludes that the ALJ did not stray from his appropriate role as the final arbiter of Plaintiff's RFC.

Finally, as a general proposition, Plaintiff suggests that the ALJ should have taken into greater consideration the Social Security Agency's conclusion that he became disabled on January 26, 2013.  Plaintiff argues that because the record does not reflect any "significant medical events" the day before that favorable decision, this Court should infer that Plaintiff was disabled for the entire five year period preceding that date.  (Doc. 10 at 18).

Such a contention is without factual or legal support.  Plaintiff was deemed disabled at age 53 on the referenced date because it constituted the date of his new application period. He was found disabled based upon the worsening of his degenerative back condition over time, and a determination that he fell under Grid Rule 201.02. (Tr. 112).  Rule 201.02 applies only when an individual with a limited education and no transferable skills, who is limited to sedentary work, reaches "advanced age" - meaning, at least 55 years of age.  In January 26, 2013, Plaintiff was only 53 years of age.  Still, at 53, Plaintiff was in the "closely approaching advanced age" category, and the Commissioner was permitted to give him the benefit of the higher age category.  In addition, Grid Rule 201.10, which applies to claimants age 50-54, also mandates a finding of disability if a claimant is limited to sedentary work.[4]

In determining that Plaintiff had become limited to sedentary work as of January 26, 2013, the Appeals Council specifically cited the Physical RFC Assessment of Gerald

---

[4]In his reply memorandum, Plaintiff suggests that the ALJ should have applied Grid Rule 201.10 to find him disabled as of his 50th birthday.  Aside from being an improperly presented new argument in a reply memorandum, the argument is without merit because the undersigned finds substantial evidence to support the limitation to "light" work.

Klyop, M.D. (Tr. 112). The referenced RFC opinion does not appear to be in the administrative record before this Court. However, on July 15, 2010, the same Dr. Klyop found Plaintiff capable of a nearly *unrestricted range of medium level of work.* (Tr. 425-432). Thus, the Grid Rule that Plaintiff invokes in his reply memorandum clearly did not apply throughout the entirety of the five-year period at issue here. Nor can Plaintiff reasonably claim that the mere presence of his chronic back condition (which existed when Plaintiff was still employed full-time at the medium exertional level) mandates a disability finding dating back to 2008 without supporting medical evidence.

The reality is that as long as the regulatory scheme is properly followed and the decision is supported by substantial evidence in the record as a whole, this Court must affirm the Commissioner's decision. It is not infrequent for substantial evidence to exist to support either a non-disability determination, or the opposition determination. While the regulatory scheme - including Grid Rules that Plaintiff later benefitted from - strives to create a fair and equitable system in which the same disability determinations will result from the same facts, the Sixth Circuit has recognized that not all variations in outcomes between seemingly like cases require reversal. Instead, there is a "zone of choice." While Plaintiff may view the determination that he did not become disabled until January 26, 2013 as "arbitrary," the ALJ's determination that he was not entitled to benefits for the preceding 5-year period still should be affirmed, because it remains supported by substantial evidence.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

20

_/s Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JEFFERY BOYER,                                            Case No. 1:16-cv-644

                 Plaintiff,                             Barrett, J.
                                                         Bowman, M.J.

     v.


COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.


## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).